PRICE, Judge.
This suit was originally brought as a possessory action by plaintiff, who alleged he was the owner and possessor of certain mineral leases and interests and that his possession of same was disturbed by the rec-ordation by defendant of a certain counter letter purporting to vest an undivided one-half interest to these properties in defendant.
On January 30, 1965, plaintiff, Eugene P. Webb, acquired certain oil and ■ gas leases covering property in DeSoto and Caddo Parishes from Great Southern Factors, Inc. These were duly recorded in the respective parishes. On December 10, 1965, and March 1, 1966, multiple copies of a document styled a counter letter were filed of record in DeSoto Parish. This instrument purported to reflect that, at the time Eugene P. Webb purchased the aforementioned mineral properties, he did so on behalf of himself and Louisiana Oil Consultants Association, title having been placed in the name of plaintiff for convenience only. Louisiana Oil Consultants Association was the trade name of the defendant herein. Plaintiff alleges that the recordation of these documents disturbed him in the possession of the mineral properties, and that he or his ancestors in title were in the undisputed possession of these properties for more than one year prior to the date suit was filed.
Defendant in answer and reconventional demand claimed to be the owner of an undivided one-half interest in the mineral leases and interests by virtue of the counter letter executed by the plaintiff and recorded by defendant in the records of De-Soto Parish. By stipulation of the parties it was agreed at the time of trial that the title to the mineral interests in question stood in the name of Eugene P. Webb, and that he had a valid title to same subject to the claims being asserted by David H. Duke in this action. The parties in effect stipulated that the court was to try title to the mineral interests and thereby converted this action into a petitory action. By an *724 exception of no cause of action plaintiff challenged the validity of the counter letter as he contended it was never intentionally executed by him. This exception was referred to the merits, and after trial the district court granted judgment in favor of defendant, recognizing him the owner of an undivided one-half interest in the mineral properties. From this judgment plaintiff has perfected this appeal.
The instrument designated as a counter letter is a three-page document. The third page thereof contains a signature line near the top of the page with the name Eugene B. Webb typed underneath it. Appropriate lines are included for witnesses. Underneath the signature line is the usual form for a notarial acknowledgment with the name of Eugene P. Webb again typed under the signature line of the person making the acknowledgment. A multiple carbon of the instrument bears the signature of Eugene P. Webb on the signature line of the acknowledgment only. The signature does not appear on the usual signature line at the end of the last paragraph of the agreement. No witnesses’ signatures are affixed, the instrument is not dated, nor is the acknowledgment subscribed before a Notary Public. Plaintiff’s signature does not appear anywhere on the original.
Plaintiff contends that the document relied on by defendant as a counter letter has not been executed by him. He admitted that the signature on the acknowledgment prepared as a part of the document in his, but testified he had no recollection of having signed same. He denied ever having any intention of executing the written agreement.
Article 2275 of the Revised Civil Code provides the methods of transferring immovable property as follows:
“Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable thus sold.”
Plaintiff has denied that any agreement existed between defendant and himself whereby the mineral interests were acquired by him for the joint interests of the parties. Therefore, it is necessary that the defendant prove the transfer to him by written evidence. Plaintiff further contends that because the instrument was not witnessed and bears no acknowledgment of his signature, that it is inadmissible to prove title.
It has been held that written agreements under private signature may be admitted in evidence once the signature thereon has been properly established in open Court. Carona v. McCallum, La.App., 146 So.2d 697 (1st Cir., 1962).
The sole issue to be resolved by the Court is whether the instrument purporting to be a counter letter on which defendant’s claim for ownership is based was sufficiently executed by plaintiff. If it is found that the instrument was adequately executed by plaintiff, there is no question but that under the terms of the instrument the defendant would be vested with title to one-half interest and- entitled to the relief prayed for. On the other hand, if the instrument was not sufficiently executed by plaintiff, the property was not transferred to defendant in writing, and, under the provisions of Article 2275, he may not establish his possession or title by parol evidence.
The circumstances from which this litigation arose, and as found by this Court, are substantially as follows. The parties to this suit occupied joint offices in the City of New Orleans. Defendant was on the board of directors of Great Southern Factors, Inc., which desired to sell the mineral leases and interests in question herein. He advised plaintiff of the availability and desirability of the property for sale. Financial arrangements were made for the purchase price with a bank in Mobile, and the sale was consummated. An assignment of proceeds was made to *725 the bank to repay the loan. The note for the loan was executed solely by plaintiff. The defendant did participate somewhat in the negotiations for the loan. Certain exchanges of moneys took place between plaintiff and defendant at about the time_of the purchase of the mineral properties, but the exact nature and purposes of these exchanges is not clearly established by the testimony. Defendant had the document called a counter letter prepared and insisted plaintiff execute it.
Defendant gave the following testimony describing the events which took place at the time he alleged plaintiff signed the agreement, to-wit: ,.
“A After the recordation of the signing and the last names — I had a counter letter drawn up which was in accordance with our earlier agreement from Mr. Webb concerning such a counter letter, and any time I desired assigning one half interest in this property to me. *
“When I brought the counter letter back to the office and gave it to Mr. Webb he fumbled and made every sort of excuse to keep from signing it; he said that he had to go out of town and would sign it later. He said that he was having his accountant, Mr. Doyle Gilliam, prepare a financial statement for him; and that his financial statement had to show the entire value of his property and he had some other deals that he was working on. He said: T will sign this after I get my financial statement made.’
“A I hold him that this was not a part of our deal; that our deal was that he would sign this counter letter immediately or words to that effect. After several hours — a day or so — of thinking about the matter, he finally said: ‘Well I will sign it but I will not give you these papers.’ So he picked up the pen and signed three or four copies of this counter letter. He said that he was going to keep it, so I took the bottom copy, which was the signed contract, and put it in my desk. I was very glad that I got him to sign it for I knew that now we had a written agreement signed by him which gave me a valid title to my interest.
“Q Did he know that you were taking a bottom copy of this?
“A He was right there; he certainly should have known if he didn’t.”
The district court found that the written instrument had been sufficiently executed by the plaintiff. In his written reasons for judgment the district judge stated that he compared the signed copy with the unsigned original which was filed in evidence, and they were identical. He further found that the signature of plaintiff was on the last page of one continuous document, which was a carbon copy of the original instrument filed by plaintiff. He was, therefore, of the opinion that the plaintiff’s signature was sufficiently affixed to the counter letter.
We cannot agree with the finding of the district judge that the signature of the plaintiff appearing on the blank acknowledgment of a carbon copy of the counter letter agreement constituted an adequate execution of the agreement by plaintiff.
Where the signature on an instrument is affixed in some unusual manner, causing doubt to arise as to whether the person affixing same intended to execute the agreement, sufficient proof must be adduced to prove the intent to execute and deliver the instrument. The evidence discloses that plaintiff, Webb, was in possession of the unsigned original of the purported counter letter agreement at the time of the trial. The carbon copy which bears Webb’s signature was not signed in the place prepared for this signature by the drafter of this document. Instead, his signature appears in the incomplete notarial acknowledgment which follows the body of the counter letter agreement. The location of the signature on the copy creates a substantial doubt as to whether he had affixed his signature for *726 the intended purpose of executing the counter letter agreement.
Considering the testimony of the defendant, Duke, in regard to the circumstances surrounding the purported execution, we cannot conclude that Webb intended to execute and deliver the counter letter agreement. Duke admitted Webb was reluctant and did not want to release any of the copies from his possession. A person who has knowingly and intentionally executed an agreement would normally have executed the original and have delivered it to the other party.
In the case of Friedman’s Estate v. Armond, La.App., 163 So. 732 (2d Cir. 1935), the Court was presented the question of whether a vendor could remove his signature from a deed prior to delivery of the deed to the vendee. In that case the vendee had executed the instrument, and it had been recorded with the Clerk of Court with instructions for the vendor to be allowed to sign after recordation. Vendor signed and then discovered a mistake in the amount of land being transferred. He thereupon erased his signature. This Court held that the mere signing of an instrument and erasing the signature before delivery does not constitute the execution of the instrument as to be binding.
In the instant case, we not only have a deficiency in the subscription of the instrument by the grantor, but the evidence convinces us that there was no intent to deliver the agreement to the defendant.
For these reasons we are of the opinion that defendant in the original action and plaintiff in reconvention, David H. Duke, has not borne the burden of proving that Eugene P. Webb sufficiently executed the purported counter letter agreement under which Duke claims title to one-half of the mineral interests. Under the prohibitions of Article 2275 of the Revised Civil Code, parol testimony may not be allowed to establish his claim. We do not find that the evidence justifies the award of any claim for damages.
It is therefore ordered that the judgment appealed from be and it is hereby annulled and reversed and that there now be judgment in favor of plaintiff, Eugene P. Webb, and against defendant, David H. Duke, declaring that certain instrument described as a counter letter recorded under Registry Nos. 315622, 315623 and 317010 of the conveyance and mortgage records of DeSoto Parish, Louisiana, null and void, and that same be erased and cancelled from the records.
It is further ordered that plaintiff, Eugene P. Webb, be recognized as the owner of all of the mineral leases, royalties, real rights and other properties described in that certain conveyance from Great Southern Factors, Inc. to Eugene P. Webb, dated January 29, 1965, and recorded under Registry No. 310039 of the records of DeSoto Parish and under registry No. 371416 of the records of Caddo Parish, Louisiana, and particularly to the following, to-wit:
TRACT 1: Jones-O’Brien, Incorporated et al — Clayton T. Rushing, Unit No. 1, Caddo and DeSoto Parishes. Louisiana
That certain oil, gas and mineral lease dated April 5, 1955, executed by Will Clark et ux, in favor of Harvey Broyles, insofar as said lease covers 6 acres of land located in Section 17, Township 14 North, Range 15 West, DeSoto Parish, Louisiana, which lease is filed for record in Conveyance Book 210, Page 145 of the Records of DeSoto Parish, Louisiana, and to which lease and the recordation thereof reference is hereby made for a more particular description of said 6 acres of land, and for all other purposes.
TRACT 2: Jones-O’Brien, Incorporated— Dr. J. F. Fisher Unit No. 1, DeSoto Parish. Louisiana.
An undivided %oths interest in and to that certain oil, gas and mineral lease dated April 26, 1955, executed by Frank Armour, as Lessor, in favor of Dr. W. H. Broyles, as Lessee, covering 29.94375 acres of land located in DeSoto Parish, Louisiana, which *727 lease is recorded in Conveyance Book 213, Page 123 of the Records of DeSoto Parish, Louisiana, to which lease and the recordation thereof reference is hereby made for a more particular description of the land described therein and for all other purposes.
TRACT 3: Jones-O’Brien, Incorporated— Silas F. Talbert Unit No. 1, Caddo and DeSoto Parishes, Louisana
(a) That certain oil, gas and mineral lease dated March 28, 1953, executed by Gladys Varner Cansón and F. C. Cansón, as Lessors, in favor of Harvey Broyles, as Lessee, recorded in Conveyance Book 210, Page 147 of the Records of DeSoto Parish, Louisiana, and Conveyance Book 765, Page 475 of the Records of Caddo Parish, Louisiana;
(b) That certain oil, gas and mineral lea'se dated March 28, 1955, executed by J. E. Sandefur, as Lessor, in favor of Harvey Broyles, as Lessee, recorded in Conveyance Book 746, Page 757 of the records of Caddo Parish, Louisiana;
said leases (a) and (b) above covering, affecting and applying to the following -described land located in Caddo and DeSoto Parishes, Louisiana, to-wit:
Beginning at a point 432.2 feet West of the Northeast corner of Section 18, Township 14 North, Range 15 West for the Northeast Corner of the tract of land herein described, run thence West with the section line of Section 18 432.9 feet for the Northwest corner of the tract of land herein described, run thence South 0° 24 minutes East 1850.2 feet for the Southwest Corner of this tract of land, thence South 62° East 492.9 feet for the Southeast corner of this tract of land and the Southwest corner of the Edward Varner tract of land, thence North with the West line of the Edward Varner tract of land 2080.5 feet to the point of beginning containing 19.577 acres of land;
(c) An undivided 14 interest in that certain oil, gas and mineral lease dated March 28, 1955, executed by Edward Varner, as Lessor, in favor of Harvey Broyles, as Lessee, covering 21.390 acres of land, which lease is recorded in Conveyance Book 209, Page 623 of the records of DeSoto Parish, Louisiana, and Conveyance Book 765, Page 479, of the records of Caddo Parish, Louisiana, to which lease and the respective recor-dations thereof reference is hereby made for a more particular description of the land described therein and for all other purposes;
(d) That certain oil, gas and mineral lease dated May 18, 1955, executed by Mary Thomas, as Lessor, in favor of Harvey Broyles, as Lessee, covering an undivided 14 interest in the oil, gas and other minerals under 5.7 acres of land, which lease is recorded in Conveyance Book 757, Page 539 of the records of Caddo Parish, Louisiana, and Conveyance Book 217, Page 309 of the Records of DeSoto Parish, Louisiana, to which lease and the respective recordations thereof reference is hereby made for a more particular description of the land described therein and for all other purposes;
(e) That certain oil, gas and mineral lease dated June 6, 1955, executed by Mrs. Fannie Hoff Cockey, as Lessor, in favor of Harvey Broyles, as Lessee, covering an undivided J4 interest in the oil, gas and other minerals in 5.7 acres of land, which lease is recorded in Conveyance Book 765, Page 471 of the records of Caddo Parish, Louisiana, and Conveyance Book 213, Page 161 of the records of De-Soto Parish, Louisiana, and to which lease and the respective recordations thereof reference is hereby made for a more particular description of the land described therein and for all other purposes.
TRACT 4: Butler — S. E. Johnson Unit No. 3, DeSoto Parish, Louisiana.
(a) An undivided 14th interest in that certain oil, gas and mineral lease dated June 27, 1947, executed by E. T. Fisher, as Lessor, in favor of Wood River Oil and *728 Refining Company, Inc., as Lessee, insofar and only insofar as said lease covers 72.36 acres of land located in Section 20, Township 14 North, Range 15 West, De-Soto Parish, Louisiana, which lease is recorded in Conveyance Book 137, Page 305 of the records of DeSoto Parish, Louisiana, to which lease and the recordation thereof reference is hereby made for a more particular description of the land described therein and for all other purposes ;
(b) That certain oil, gas and mineral lease dated April 5, 1955, executed by Will Clark et ux, as Lessor, in favor of Harvey Broyles, as Lessee, insofar and only insofar as said lease covers 3 acres of land lying within Section 20, Township 14 North, Range 15 West, DeSoto Parish, Louisiana, which lease is recorded in Conveyance Book 210, Page 145 of the Records of DeSoto Parish, Louisiana, to which lease and the recordations thereof reference is hereby made for a more particular description of said 3 acres of land and for all other purposes.
(c) That certain oil, gas and mineral lease dated April 5, 1955, executed by Mandy Guice, as Lessor, in favor of Harvey Broyles, as Lessee, covering one acre of land located in Section 20, Township 14 North, Range 15 West, DeSoto Parish, Louisiana, which lease is recorded in Conveyance Book 210, Page 141 of the Records of DeSoto Parish, Lousiana, to which lease and the recordation thereof reference is hereby made for a more particular description of said one acre tract of land and for all other purposes.
TRACT 5: Jones-O’Brien, Incorporated— Keatchie Townsite Unit No. 1, DeSoto Parish, Louisiana
An undivided J4th interest in that certain oil, gas and mineral lease dated June 27, 1947, executed by E. T. Fisher, as Lessor, in favor of Wood River Oil and Refining Company, Inc., as Lessee, insofar and only insofar as said lease covers 153.862 acres of land lying in Section 21, Township 14 North, Range 13 West, DeSoto Parish, Louisiana which lease is recorded in Conveyance Book 137, Page 305 of the records of DeSoto Parish, Louisiana, and to which lease and recordation thereof reference is hereby made for a more particular description of the land described therein and for all other purposes; and that certain oil, gas and mineral lease dated April 26, 1955, executed by Garbis I. Bazemore, as Lessor, in favor of Dr. W. H. Broyles, as Lessee, covering 11.611 acres of land located in Section 21, Township 14 North, Range 15 West, DeSoto Parish, Louisiana, which lease is recorded in Conveyance Book 213, Page 125 of the records of DeSoto Parish, Louisiana, and to which lease and the recordation thereof reference is hereby made for a more particular description of the land described therein and for all other purposes.
TRACT 6: DeSoto Parish. Louisiana
All and singular the right, title and interest acquired by The Great Southern Development Company, Inc. by assignment from Dr. Joe E. Broyles of date December 9, 1957, filed for record in Caddo Parish, Louisiana under Instrument No. 168371, and filed for record in DeSoto Parish, Louisiana, under Instrument No. 262673, and all of the interest acquired by assignment from Dr. W. H. Broyles of date December 9, 1957, filed for record in DeSoto Parish, Louisiana, under Instrument No. 262671 of the records of DeSoto Parish, Louisiana.
(1) An undivided interest in and to all of the oil, gas, sulphur and other minerals on, in and under 6 acres of land located in the SW/4 of NE/4 of Section 18, Township 14 North, Range 15 West, DeSoto Parish, Louisiana, being all that certain mineral interest conveyed by Dr. Joe E. Broyles to The Great Southern Development Company, Inc. by mineral deed dated December 9, 1957, recorded under instrument No. 262672.
(2) All of the oil, gas, sulphur and other minerals under a certain tract of land located in Section 20, Township 14 North, *729 Range 15 West, DeSoto Parish, Louisiana, particularly described as follows:
Commencing at the Southwest corner of a tract of land purchased by Will Clark from William Barnes, Jr. as per that deed recorded in Conveyance Records of De-Soto Parish, Louisiana, in Book 193 at Page 211; thence run north 3.53 chains for point of beginning; run thence East 8.5 chains; thence run North 1.2 chains; thence run West 8.5 chains; thence run South 1.2 chains to point of beginning,
and being the same mineral interest conveyed by Dr. Joe E. Broyles unto The Great Southern Development Company, Inc! by mineral deed dated December 9, 1957.
All costs of this appeal to be assessed against appellee.